Good morning, your honors. May it please the court, my name is Stacey Tolchin and I, with Megan Brewer, will be representing the plaintiff's appellants. Good morning. Plaintiff Hanan is now 39 years old. He's the father of two United States citizens' children now. He's been married for more than 12 years to a U.S. citizen. He faces permanent- This is William. I'm sorry? This is Gilliam. Hanan is the non-citizen. Yes. He faces permanent separation from his family based on a marriage that took place when he was 23 years old, more than 15 years ago, when no immigration petition was filed. This court has three issues to review today. The first is whether the statute at 1154 C2 applies when no immigration benefit was sought. Well, just a minute. Let's look at this. What is my standard to review on this decision? Your standard is de novo, your honor. Why is it de novo when Zereggi says that my decision to impose the marriage fraud under the APA, and that's what we're here under, will be set aside only if it is arbitrary, capricious, or an abuse of discretion. Because this is an issue on the first issue. Well, just a minute. It's a decision on whether the marriage fraud will apply, isn't it? But C2 is pure statutory interpretation. Well, I understand what C2 is, and I understand that there's a C1 as well. But all I'm trying to say is, in imposing those, aren't we looking at this on an arbitrary, capricious, and an abuse of discretion determination? Arbitrary, capricious, and contrary to law, right? Well, contrary to law. Okay, Lynn, let's look at this. It seems to me that under C2, what we're really looking at is the attorney general could find this problem. It wouldn't be necessarily on filing of the I-130, but it might be under some other overt act. And the overt act in this particular situation would be the payment of money to get married. And so, therefore, C2 would apply. Your Honor, that is a possible interpretation. Not possible. It's exactly what happened. Can I direct you, Your Honor, to the House report that's at 99-906. And when it discusses the amendments that are at issue here, it says this section amends 204C of the act to ensure that aliens who unsuccessfully sought immigration benefits through marriage fraud may never receive immediate relative or preference status. And so there is a requirement under a congressional But counsel, I mean, so Judge Smith just pointed to the plain language of the statute, which has to prioritized over legislative history. Why isn't his interpretation correct? If C2 encompasses the idea of a conspiracy that involves an overt act, and that overt act could be paying money for a sham marriage, why would it need to require seeking benefits in order for the marriage bar to apply? Because I don't think, Your Honor, that it is the plain language of the statute, that if you look at the INFA statute, that the reference to a petition at the end for the effective date does imply that a petition has to be filed. And again, it's for seeking immigration benefits, right? And so even the payment of money for a marriage that may be fraudulent, let's say it's a marriage where one person... I mean, C1 mentions the seeking of benefits. Correct. But C2 does not. C2 doesn't. C2. Yeah, that's the issue in the case, right? C2 does not. The AG has determined that an alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws. And if for the overt act in doing that, which I appreciate they have to have an overt act, is simply paying the money to someone else in order to get married, then you've done what the overt act is that C2 would apply. If the overt act was for the purpose of an immigration benefit, but how do you tell that if there's no benefit that's sought? Just a minute. It doesn't say anything about benefit there. It says for the purpose of evading the immigration laws. That doesn't have anything to do with benefit. Now it does have about benefit in C1, but C2, that's why I read you C2. Right. Because it's evading the immigration laws. And frankly, I said, well, what do you have to have for that? Well, you've got to have an overt act. And so what could the overt act do? Well, you could have got married, but then it would be the criminal statute. And so you don't go with that. So you've got to have something over and above that. So paying the money, which is exactly what happened here in the first marriage. So Your Honor, that is disputed that that was for the purpose of immigration benefits, as you know, right? The purpose of evading immigration laws. Correct. The plaintiff maintains he was supporting his wife financially. Right. Well, that's a different question, right? We're struggling with two different issues here. One is the plain meaning of the statute. And I'm not unsympathetic to the fact that we really dig into the legislative history. It appears that C2 was really amended to address the K-1 fiance visa situation. I get all that. And you've briefed the issue well. The problem is the plain language really controls. And in subsection one, it's been accorded or has sought to be accorded an immediate relative or preference status. So that is an attempt to secure the benefit. But C2 doesn't have that. It's merely an attempt or a conspiracy to enter into marriage for the purpose of evading immigration laws. Now, whether the government can actually establish that, I mean, we can view that as a separate question. But the statutory interpretation here, it's really hard to fight the plain language. Your Honor, I understand. I do want to just note a couple more things about C2 that are important. C2 expanded what the benefits were. So C1 is only a spousal-based visa, essentially. You green card through a spouse. C2 expands that benefit. So if you seek asylum based on a fraudulent marriage, you'd fall under C2. If you seek an H-1B as a spouse based on a fraudulent marriage, you'd fall under C2. And so that broader language seems to not only address those people who never got married, like the fiances, but also much broader immigration benefits that are not contemplated under C1. If I can move on to the Qing issue, just given my time. Well, but follow that logically through. How does that help your statutory interpretation? Again, it shows that there must be an immigration benefit sought, right? So if somebody gets married to somebody who is applying for asylum just because they want to get an asylee derivative status, that would fall under C2 if the asylum application was filed. It broadens C1 extensively, but I don't think it broadens to the point of just requiring only a marriage and the overt act, let's say, of the payment. Because if nothing is sought, then there is no furtherance of the immigration fraud. I mean, I agree that one of the purposes of the statute was to encompass sham visa applications where the marriage isn't finalized. But that doesn't mean that that would be the sole focus of it. If there are other – I guess I have a hard time seeing that Congress intended to amend the statute in 1986 to cover more grounds for sham marriages, but they meant to specifically carve out or exclude a sham marriage where a marriage would not be applied for at that time. I think the issue, Your Honor, is what's the meaning of C1 then, right? What's left of C1? Because if the example of just a marriage and an overt act falls under C2, why do you need C1? C1 becomes totally irrelevant. Well, I mean, the government made a plausible argument that C1 can involve one-sided petitions. And I read your brief and I didn't quite agree with the notion that the only way one-sided could be is if the person seeking asylum benefits was the one that was unaware. Why couldn't you have the U.S. citizen be unaware that this marriage is not a bona fide one and that the person seeking the benefits was doing it only to obtain an immigration benefit and then was intending to, say, divorce soon after? So, Your Honor, one thing to point out is that C2 includes attempt or conspires, right? And so the attempt language would include the filing of an immigration benefit. So in the unilateral marriage example, where only the U.S. citizen believes the marriage is real, there still has to be a filing of an immigration benefit. And that's clearly an attempt. So I don't see how there's any situation where you could have the ground of C1 apply and not be encompassed by C2. Well, C2 encompasses people that are in cahoots, right? If you're conspiring, you're involved in the attempt to evade immigration laws. Or an attempt, Your Honor. Or the attempt. Or the attempt. So you don't have to have a conspiracy. You don't. No, that's true. You don't have to have a conspiracy. But I think the district court made the point, and I think it's not wrong, that you don't have to have that. There can be overlap, and Congress can still decide to have these two separate provisions to encompass different areas of conduct. And I haven't really seen you explain that the overlap is complete. Because this is one of those examples, right? C1 does not cover this circumstance where someone has not applied for immigration benefits. And perhaps one of the purposes that Congress sought was to cover sham marriages where an immigration benefit has not been sought. And you get it through C2. Your Honor, I still think the reading, and I don't think the statute is unambiguous, and I do think, therefore, the legislative history does come in. And that's when you look at the intent on the filing or seeking of immigration benefits. If you don't mind, can I move to Qing? We only have a few minutes. So the next issue, of course, is the right of cross-examination of the ex-spouse. And the court, as Your Honor is aware, in Gavrilescu, recently in an unpublished case, noted that USCIS has yet to apply Qing on a practical level to any cases. Assuming that all that is true, is there prejudice shown here? There is, Your Honor. Isn't that by his own admission, he engaged in marriage fraud? So, Your Honor, there's two pieces of evidence the government relies on. One is the Jaimez statement. The other is the BGC report. Now, the BGC report, the plaintiff, Honan, contests that he made the statement. He contests that there was marriage fraud. The problem with the BGC report is it's redacted and the author is not identified. And so there is no presumption of reliability that usually applies to a government doctrine. And we know that there's a lot of unreliable information in here. It says that immigration benefits were sought. That wasn't true. It said that there was a divorce. That wasn't true. He contests that information and that's why the court's decision in Zarazegui is very important. This is not substantial and probative evidence. The standard for that is credible, reliable information. That's from the board's case in matter of P. Singh. And it does not meet that standard. So there is prejudice because the only things that the substantial probative... Well, whose burden is it to show prejudice? So in the Ching analysis, it is the plaintiff's burden. In the analysis of substantial probative evidence, that is the government's burden, the matter of P. Singh burden. So the court needs to look at what is the record when you take out the Jaimez statement and you take out the BGC statement. There's nothing there. Let me say, you skipped right to prejudice, assuming that there's some due process right here. And I guess I'm trying to figure out why there is. Happy to answer that, Your Honor. Did BIA ignore due process altogether? The BIA says, you argued Ching, go to the ex-wife and get a statement from her. You don't need to tell me what they said. Did they ignore it? They acknowledged that Ching could apply. But did they ignore it? No. Okay. So then we can't send it back to them to think about due process. We're going to take it up ourselves. Is that where you are? Because I got the idea. You wanted us to send it back to have them think about due process again. If the court believes they should... No, I'm not asking what the court believes. I'm asking, what's your argument? I think it's a Chenery issue, right? You can't... Well, I guess I'm trying to figure out, do you think they addressed it or not? They addressed it, but I don't think you can... Well, if they addressed it, did they conclude that Ching was not applicable? No. Okay. If they didn't include a clue that wasn't available, didn't she get an opportunity to get... Plaintiff get opportunity to give evidence that was an adequate substitute for the hearing? No. Well, now, just a minute. Let's think about that. In Ching, without an I-130 approval, Ching faced imminent removal, the right to marry and enjoy marriage as liberty interest protected by the due process clause. Here, MUNAs would throw out the liberty interest. We don't have to think about the liberty interest in this particular situation because of MUNAs. So they did find a property interest, but they never analyzed it. So we really haven't got Ching on dead set here in the first Matthews factor in my book, because we don't have any liberty interest anymore. All we have is a property interest and it wasn't analyzed. Would you agree? I agree, but Ching recognizes a property interest. They do recognize, but they never analyzed it. Let's look at the second factor, the risk of an erroneous deprivation of such an interest. In Ching, the only evidence was the testimony of the ex-spouse. The evidence presented extensive details of her marriage to Fong, including descriptions of intimate conversations, evidence of her life with Fong, bills, and a lease they both had. The I-30 was denied after only one intent to deny given to the plaintiff. Here, we have totally different interest, different situation. We have three notices of intent which were given. Information was given on March 2017. Denials were given on June 2017. July 2020, and again in February 2012. The responses from the plaintiff gave no extensive details of the marriage, none. In fact, the only thing he said was, we married young, she had a drinking problem. We have photos of the wedding. My father, uncle, and friend think it was modifiably married. The testimony of the wife in this instance was not given for this problem. It was given for a gambling case. Plaintiff himself in the gambling case said, the authorities, guess what? I entered into this marriage fraudulently. That's what he told the gambling authorities. Plaintiff didn't make the arguments he's making here about due process interest to the BIA. In fact, he just thought that the documents supplied by the government agent would be there. So I'm saying to myself, it doesn't seem to me there's any risk of erroneous deprivation in this particular instance if I take the second factor. Now, how do you respond to that? Your Honor, do I have permission to keep going? Yes, please answer that question. So the second- Well, I'm trying to have you respond. Tell me why I've missed the second factor. The second factor takes you look at what does the evidence look like for the government who has the burden- Well, I am. I laid it out here so you could respond. Yes. And so the only evidence is the report. That's the only thing they have. And he contests- Well, now, just a minute. That's not exactly the only evidence. I just went through it. So, Your Honor, in a marriage fraud case, it's a bifurcated approach. So you first look at the government's evidence. Have they established by substantial and probative evidence that the marriage is fraudulent? Then the burden shifts if they have met that standard. So that is why there's two items listed. You take out the Hymas statement. You look at the BGC report. Does it meet that substantial probative standard? Under a matter of piecing, it does not. So then you get to the evidence. And yes, the evidence may be scarce. It was a two-year marriage. It was volatile. But that doesn't matter if the government has not met its initial burden. And that's what step two of the Matthews v. Eldridge- The big situation then is, as the district court found, the government had met its burden. The district court did find that. And I went through the testimony for you so you could tell me why the district court was wrong. Because the BGC report is redacted. It's not reliable. It's not substantial and probative evidence of marriage fraud. This is a high burden. Assuming that you lose on that, and we agree with the district court that the government's met its burden, then we look at whether substantial evidence supports your claim or your client's claim that the marriage was legitimate, right? Correct. And here, unlike in Qing, you've got some declarations with very conclusory. If you look at the nature of the evidence presented here, it's very different than the weight of the evidence in Qing, no? It is, Your Honor. But when you look at the bifurcated approach, that's why the court has to hold the agency to this high standard from matter of Pei Xing and Zer Zegi. Again, this is not a case where did they meet their initial burden? Did the plaintiffs meet their initial burden? It is a case of did the government meet its burden of more than a preponderance of evidence that the marriage was fraudulent? Now, I do agree that there's not an abundance of evidence like there is in the Qing case. But these were people that were 23 and 19 years old that were apparently drinking heavily and had a very short-lived relationship. So many marriage cases start out like this. And the fact that they did not file is significant. The fact that they didn't seek an immigration benefit really supports that they did not seek immigration fraud. I mean, I think, but I keep wondering with four opportunities, why was no attempt ever made to file anything that related to a lease or any indicia of an ongoing marriage? Unlike Qing, there's no joint property, no shared residence, no commingling of financial resources, like none of those things. And so I'm not sure I agree with your notion that it's this bifurcated thing and the court doesn't look at the totality. The deprivation is, should we subject this ex-spouse to cross-examination because there would be a harm here? And the facts that are lacking in this case make that deprivation much lower. I'm not sure that it has. And there probably is enough in the state's report, in the BCG report, that said, well, this is what Mr. Hanan said. And this corroborates some of the details about what the ex-spouse said. So there's very little in the report. It's just a statement that it was arranged for immigration fraud. I just want to point out... I mean, they both mentioned George, right? So this illusory George figure crops up a couple of times now. Right, but this is why cross-examination matters. Again, they were 19 and 23 years old. In Qing, they were adults. Very few people who get married in 19 and 23 are going to have the same sort of corroborating documents that you would for a marriage. And in fact, many marriage cases start out where nothing is filed. And once... Did they ever live together? They... He says they were together sometimes. She says they were not. They visited his family. He asked her to move to San Francisco. She said no. That's really what broke down the marriage. So again, they were very, very young. And so you just can't expect the level of corroboration. I am way over, Your Honor. Yes, you are. Our questions did take you over time, but we appreciate your responses. Let's hear from the government. Good morning, Your Honors, and may it please the Court. Assistant U.S. Attorney Kelsey Helland for the government. Your Honors, Appellant Ophir Hanan told California law enforcement officers in 2011 that his first marriage had been arranged so that he could get his green card. He told them that he had been instructed to pay his then-wife until he got that immigration benefit. And he provided details about how he had done so by providing direct deposits to her bank account. Five years later, completely independently, his former wife tells U.S. immigration officials that she had married Hanan. The whole purpose of them doing this married thing was for him to get his papers and her to get some extra cash. Now, Congress decided over 40 years ago that no marriage-based immigration petition shall be approved if the government has determined that it was entered into for the purpose of evading the immigration laws. I have a question on your statutory interpretation. It appears to me that if we were to accept the government's reading, subsection 1 would be entirely subsumed. So it's completely superfluous. I know that the government and the district court came up with a one-sided marriage fraud example, and Judge Sanchez's question told you a little bit about that. Can you play out that example for me and explain to me why the attempt to enter into marriage wouldn't cover that hypothetical scenario? I'm not sure that the attempt prong wouldn't cover that scenario, Your Honor. I think if the alien did not... But it wouldn't, so it essentially would cover that scenario. I'm trying to think of an example or a scenario where one is covered, but yet two is not. Can you think of an example? I think one where the alien was not at fault in the first petition, in the first marriage, that is. So if the U.S. citizen spouse had the intent to commit fraud, the alien did not, then I think that would be covered by C1. Okay, so that's a one-sided marriage where it's not the alien trying to enter into marriage and the citizen is innocent or unknowing. It's the flip scenario is what you're thinking of. The citizen is essentially entering into the marriage for the benefit of the alien, but the alien doesn't know it. I think that's right. I think it's an unlikely case. Does that ever happen in real life? Not that I'm aware of, Your Honor, but as... And even from, for fairness, like why would that create a marriage bar? If the alien is there wanting to enter into a marriage, why would the agency ever apply a marriage part of that circumstance? Well, I think it's unlikely that Congress drafted the statute with that specific circumstance in mind. I don't think they were trying to create these two provisions such that that would be the only area that wasn't an overlap. But it sounds like you agree with your friend on the other side that the attempt in C2 would seem to encompass the other one-sided scenario of the alien wanting to enter into a sham marriage and not the U.S. citizen. Yes, and I think that's entirely consistent with Congress's stated purpose of deterring immigration fraud, right? The purpose of these amendments when Congress enacted them in 1986 was to deter immigration fraud. It was not to close one or another loophole. It was to solve a massive problem of marriage-related immigration fraud. Right, well, we're supposed to read these two provisions in a way that harmonizes both if we're able to do that. So what do we do in a situation where one completely subsumes the other? You give effect to the plain meaning of the statute. There's plenty of precedent, including cited in our papers, that where some redundancies between the text that Congress passed, where that's present, that's not licensed to rewrite the statute to avoid surplusage. There's the Pugin case and the Barton v. Barr case from the Supreme Court. In both of those cases, also involving immigration statutes, also involving redundancies in criminal offenses, the Supreme Court explained that there are often, they used the word, often redundancies in statutory drafting. And there could be a variety of reasons why that's so. It could be Congress trying to come at the problem from multiple angles. It could be, you know, legislative oversight drafting. Yes, there are canons about redundancy, but another canon is that we don't read a statute to make one completely superfluous. And so I think there's a distinction to be made between a redundancy versus essentially wiping out any need for C-1. I'm not sure that there is. I think if you look at how the statute was amended here, what Congress did makes a lot of sense. There was a pre-existing marriage bar before 1986. That one was found to be insufficient in various ways. Congress kept that provision in C-1 before there was just C. There was no C-1. Congress kept that provision in C-1, but broadened it by applying it not only when immigration benefits had been awarded, but also when the petition sought to be awarded. So it included attempt and success in C-1. So when Congress added C-2, it kept the prior historical marriage bar in place. It didn't completely do away with it. But then it added C-2 to broadly deter other kinds of immigration fraud that hadn't been adequately caught previously. So I think what you see in the drafting is an effort to preserve the historic marriage bar. They didn't completely get away with that version of it. They expanded it. But they didn't give away it. Rather, they added another kind of marriage bar. Counselor, I'm wondering why you have abandoned the BIA's approach to this particular situation, which is that C-2 has to have an overt act. I mean, I tried to put together the BIA's approach to the statute. That's why I ask counsel about that. Why did the government abandon that approach, which they took in matter of Ortega? They took an 8 CFR 204.2 A-1. Both of those approaches are that the first C-1 has to do with filing the petition, the I-130 petition. But C-2 deals with marriage or some other overt act, which would be something that the AG could do. And that's what they said in matter of Ortega. Why did you abandon this? It seems to be obvious. It's a perfectly reasonable reading, Your Honor. And I think the court could adopt it here. And I think applying it... Can we adopt it? I don't see why not, Your Honor. I think it would... Because we have a de novo review? Or is it we have quite opposite, an abuse of discretion review? So it's abuse of discretion to the ultimate question applying it. It is de novo as to questions of statutory interpretation. Now, I think applying that test here, there clearly was an overt act. There was a conspiracy. There was a meeting of the minds between the appellants and his former spouse. You see multiple sources of evidence for that. They're independent statements. There was an overt act. Whether that's the marriage itself, the payments that were made, there clearly was an overt act here. Well, and further, the reason that this seems more likely than interpreting a statute to do the same thing that the first part of the statute can be is that in matter of Ortega, it says even goes further to say, it is not enough, however, if two parties merely agree to enter into the marriage for the purpose of evading the laws, but never engage in any other action or conduct that favors that agreement. But that's not the case here, Your Honor. I understand that's not the case. But nonetheless, it accentuates the reasoning given to their interpretation of C1 and C2. Sure. And that may be a good way to harmonize these two provisions. I don't think the court needs to make that decision because either way, it clearly was met here. There was a conspiracy. There were plenty of overt acts. And there's no substantial evidence to the contrary. Maybe we should move to due process. Do we have to give due process here? Your Honor, there's always due process. The question is what processes do. Okay. Here under Munoz, as Your Honor has recognized, there's no longer a recognized liberty interest. I heard my friend on the other side agree with Your Honor on that point. And the remaining property interest is not material in any way that would require additional process to be provided, and certainly not an additional cross-examination of the witness that they have been requesting. Well, wait a minute. Ching does talk about the property interest. And so it doesn't go away. Why would that interest alone not be enough to require cross-examination under certain circumstances? So interests come up in two ways in the due process analysis. There has to be a threshold interest to even get to Matthews to have that apply. And then in the first factor under Matthews, there's an evaluation of the nature of the interest at stake.  So Ching talked about property interests at that first threshold level because the granting of I-130 is mandatory, not discretionary. It passes that initial threshold of triggering Matthews. Right. But at the first Matthews factor, where the court actually looks to the nature of the interest, Ching doesn't talk about a property interest there. Ching talks about the liberty interests of having a spouse live together in the United States. And that is under Munoz. That is out the window. I get that. But let's stick with the property interest. If someone has a right on a statutory basis, if they qualify for the I-130 to receive it, and the government is denying it on the basis of, you know, let's take the Ching example, an ex-spouse's statements that are very vague, but contradicted by detailed information that there was a marriage. Why wouldn't that possibly – why wouldn't that alone trigger a possible need for cross-examination? I'm not saying that that's this case. I'm just wondering why you're pressing an argument that doesn't need to be pressed, that you don't ever have to have a cross-examination under a property interest. Well, I don't think the court here can ignore what the Supreme Court said in Munoz. And I'm trying to faithfully apply Munoz to the Matthews factor. And I'm not relying on Munoz. I'm relying on the statutory property interest. Because if you take the liberty interests that Munoz rejected off the table, then what is left of that property interest? Again, you've gotten past the threshold of getting into the Matthews factor. So sure, the property interest is sufficient to get to that point. But the court's supposed to look at the nature of the interest, at what's at stake. What value is an approved I-130 if it doesn't carry with it the exact liberty interests that Munoz has rejected? It's a piece of paper that serves no purpose, because those liberty interests are what actually gives it value. All of that is – I think the district court handled this properly when it said any remaining interest based on the property interest in the approved I-130 is limited at best. And ultimately, therefore, the first Matthews factor weighs in favor of the government. I think that's the appropriate way to handle it. Okay. So if we go to the risk of erroneous deprivation, what's your argument about that? It seems to me that Ching was pretty heavy on the fact that this was a tough argument for the government. And I laid out as best I could the best argument that I could do for the government on this. Is that enough to switch the B, the second factor of the Matthews, in the government's favor? Yes, Your Honor, it is.  Because as this court has found at least four times since Ching, when there's that much evidence in favor of the government's position and only meager evidence on the petitioner's side, a cross-examination hearing is not required. Well, when you say that much, your opposition counsel said there wasn't hardly any. Well, you have the petitioner's own statement. It's a statement against his own interest in 2011. I think that's why she broke it into that two-tier, two-step analysis and say, well, the government didn't carry its burden, so we don't really need to worry too much about the step two, what the petitioner was able to come forward with. Oh, but I disagree, Your Honor. I think as the three different notices of intent to deny, providing petitioner the opportunity to respond, showed there was substantial evidence in favor of the government's determination that the first marriage was fraudulent. Again, there was petitioner's own statement in 2011. He admits that he made that statement, right? In 2011, that is to say, he admits that he spoke to California law enforcement officers in 2011. In his brief, he said as much. He doesn't take issue with hardly any details from that statement except the assertion that he paid his wife in order to get a green card. That's the only thing that he disputes from that statement. It is, of course, in his self-interest to dispute that fact, but he doesn't bring any details. He doesn't do what the petitioner did in Qing itself, where there was detailed testimony about the nature of their marriage, the romantic details of the marriage. There was documentary evidence in the form of a joint lease or utility bills. Those things are absent here, right? So I think the government clearly met its burden at the initial step of that two-step analysis, and the agency reasonably found that he had not rebutted the government's evidence. So I mentioned there were four cases, at least, that this court has found that Qing hearings were not required. I think the fact that petitioner's own statement incriminated himself here puts this case on those lines, on that side of the line, as compared to Qing itself. Well, counsel points out, and I think that that's not a bad point, that when you're 20, I think 23, he was at that time, and the partner was 20 or 21, there may not be the type of evidence that you would expect to see in Qing. But as to that issue, we're on substantial evidence review, right? That's right, Your Honor. But also, if I may, he could still provide evidence of how their relationship was formed, more details about how he met her, why he wanted to marry her in the first place. That's absent here, right? That's the kind of thing... I see that I'm out of time, if I could just finish. Go ahead and wrap up, please. Thank you. That's the kind of thing... It's consistent with the kind of details that were provided in Qing, and they are totally absent here. He could have provided them, but he didn't, and that speaks volumes, Your Honor. Let me see if my colleagues have any additional questions. All right. Thank you very much for your argument. Thank you to both sides. Been very helpful. The matter is submitted, and we'll issue our decision in due course.
judges: SMITH, NGUYEN, SANCHEZ